# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **MANUEL MARTEZE WILDER,**  *Plaintiff*,  v.  **WAYNE SHELDON FISHER, JR.,** *et al.*,  *Defendants*. | **CIVIL ACTION NO.**  **5:20-cv-00143-TES** |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Manuel Marteze Wilder ("Wilder") sued the Defendants for a variety of federal and state causes of action. [Doc. 1]. Before the Court are Defendants Nu-Way Weiners,[1] Inc. ("Nu-Way") and Donna Hulie's[2] ("Hulie") Motion to Dismiss [Doc. 8] and Defendants Wayne Sheldon Fisher, Jr., ("Fisher"), Joseph Tanner Graves, ("Graves"), John Scott Webb ("Webb"), V.N. Hill (Hill"), Brett Evans ("Evans"), and the City of Warner Robins' ("Warner Robins") Motion to Dismiss [Doc. 9].[3]

---

[1] "Thanks to the misplacing of a few vowels by a local sign-maker, Nu-Way has intentionally misspelled W-E-I-N-E-R on its marquee since 1937." NU-WAY WEINERS, https://nu-wayweiners.com/our-history/ (last visited Sept. 28, 2020).

[2] Wilder alleges that Nu-Way is vicariously liable for the actions of Hulie, one of its employees, at all times relevant to this action. [Doc. 1, ¶¶ 76–80]. Nu-Way doesn't challenge Wilder's claim of vicarious liability in this motion.

[3] Fisher, Graves, Webb, Hill, Evans, and Warner Robins are collectively referred to as the "Law Enforcement Defendants." Wilder alleges that Graves, Hill, and Fisher are the three officers who reported to the scene of the incident. [Doc. 1, ¶ 31]. Wilder alleges that Webb and Evans are responsible for the actions of the officers of the Warner Robins Police Department under a theory of supervisor responsibility. [*Id*. at ¶ 33].

## BACKGROUND

On April 13, 2018, Wilder went to the Nu-Way restaurant at 1762 Watson Boulevard in Warner Robins, GA, to "have . . . made right" an order that Nu-Way incorrectly prepared for Wilder the previous day. [Doc. 1, ¶ 16]. Hulie, a Nu-Way employee, "hit Wilder's hand" when he tried to point to her computer screen, an event captured on security video. [*Id*. at ¶¶ 11, 18]. The Complaint is not crystal clear about what happened next, but the Court understands that upon Hulie swatting Wilder's hand, Wilder "defended himself." [*Id*. at ¶ 91]. Hulie called the police and reported an assault. [*Id*. at ¶¶ 19, 90]. Hulie accused Wilder of "trying to open her cash register." [*Id*. at ¶¶ 92, 93].

Officers Graves, Hill, and Fisher of the Warner Robins Police Department reported to the scene. [Id. at ¶ 31]. Officer Graves obtained an arrest warrant for Wilder based upon information gathered from Hulie and from viewing the video of the incident. [*Id*. at ¶ 23]. Wilder heard about the arrest warrant and turned himself in and subsequently stayed in custody for approximately 47 days. [*Id*. at ¶¶ 24, 25]. The "prosecution" of Wilder has not "moved forward" for two years. [*Id*. at ¶¶ 30, 98, 99 ("The charges against Mr. Wilder are preposterous and cannot succeed, should they continue to be prosecuted, though two years later, they have not moved forward.") ("The prosecution of Plaintiff commenced by Defendants has gone nowhere, and it will

terminate in favor of Plaintiff.") ("The prosecution of Plaintiff has been commenced and continued with malice.")].

Exactly two years later, Wilder filed this lawsuit. [Doc. 1]. Wilder raises the following causes of action against the Law Enforcement Defendants:

- 42 U.S.C. § 1983 claim alleging violations of his Fourth and Fourteenth Amendment rights [*Id*. at ¶¶ 40–53];
- Georgia Constitution claims for violations of Article 1, Section 1, Paragraph XIII (the Searches, Seizures, and Warrants provision), and Article 1, Section 1, Paragraph XVII (the Bail, Fines, Punishment, Arrest, and Abuse of Prisoners provision) [*Id*. at ¶¶ 54–56];
- false imprisonment [*Id*. at ¶¶ 57–63];
- false arrest [*Id*. at 64–70];
- malicious prosecution [*Id*. at ¶¶ 89–103];
- intentional infliction of emotional distress [*Id*. at ¶¶ 108–111];
- negligent performance of official duties [*Id*. at ¶¶ 112–115];
- negligent hiring and retention [*Id*. at 116–120]; and
- punitive damages [*Id*. at ¶¶ 121–123].

Wilder raises the following causes of action against Nu-Way and Hulie:

- false imprisonment [*Id*. at ¶¶ 57–63],
- false arrest [*Id*. at ¶¶ 64–70],

- simple battery [*Id*. at ¶¶ 71–75],

- 42 U.S.C. § 1981 claim for race discrimination [*Id*. at ¶¶ 81–88],

- malicious prosecution [*Id*. at ¶¶ 89–103],

- intentional infliction of emotional distress [*Id*. at ¶¶ 108–111], and

- punitive damages [*Id*. at ¶¶ 121–123].

The Law Enforcement Defendants filed a Motion to Dismiss [Doc. 9-1] seeking dismissal of Wilder's state-law false imprisonment, false arrest, and malicious prosecution claims against them, as well as dismissal of the punitive damages claim against the City of Warner Robins.

Nu-Way and Hulie also filed a Motion to Dismiss [Doc. 8] seeking dismissal of Wilder's state-law false imprisonment, false arrest, and malicious prosecution claims.

The parties have fully briefed the issues and the motions are ready to be decided.

## DISCUSSION

A.  Motion to Dismiss Standard

When ruling on a Rule 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual

4

proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts use a two-step framework. *Id*. The first step is to identify the allegations that are "no more than mere conclusions." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id*. (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all the factual

5

allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds* by *Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

B. <u>Analysis</u>

Wilder brings state-law claims of false imprisonment, false arrest, and malicious prosecution against Nu-Way, Hulie, and the Law Enforcement Defendants. Georgia law contains legions of cases seeking to distinguish and untangle these three often

interrelated and sometimes confusing causes of action. *See Sheffield v. Futch*, 839 S.E.2d 294, 300 (Ga. Ct. App. 2020) (quoting *McClendon v. Harper*, 826 S.E.2d 412 (Ga. Ct. App. 2019). Although plaintiffs routinely bring all three claims, "[o]nly one, if any [of these three causes of action], will lie as to a particular defendant in particular circumstances." *Id*. (quoting *Reese v. Clayton County*, 363 S.E.2d 618 (Ga. Ct. App. 1987)). False imprisonment occurs when one unlawfully detains another without judicial process, meaning detention without the involvement of a judge at any point. *Id*. False arrest is detention under process of law, meaning detention pursuant to a warrant. *Id*. Malicious prosecution is detention with judicial process followed by prosecution. *Id*. Georgia law does not look favorably upon false arrest and malicious prosecution claims because its public policy is to encourage citizens to bring to justice those who appear guilty. *Desmond v. Troncalli Mitsubishi*, 532 S.E.2d 463, 466-67 (Ga. Ct. App. 2000).

It makes sense for a plaintiff to be reluctant to put all his eggs in the basket of one cause of action; but, things almost always get messy when he tries to put one egg into three baskets. Courts have long held these three torts to be mutually exclusive: facts that support one necessarily foreclose the other two. *Sheffield*, 839 S.E.2d at 300. A plaintiff may be tempted to allege as few facts as possible to keep as many of these three causes of action on the table as long as possible. But this strategy puts that litigant in danger of not properly pleading any of the three torts under the *Twombly* and *Iqbal* framework.

Two questions must be answered in order to determine which of these three causes of action is legally viable. First, was there a warrant? *See id*. ("The key distinction between false arrest and false imprisonment is whether the person was detained using a warrant or not." (quoting *Smith v. Wal-Mart Stores East, LP*, 765 S.E.2d 518, 521 (Ga. Ct. App. 2014))). If the answer to the first question is "yes," then false imprisonment fails. *Id*.

The second question is whether there was a prosecution. *Id*. (A "claim for false arrest differs from one for malicious prosecution only in that malicious prosecution requires [the] additional element of showing that prosecution was carried on." (citing *Garner v. Heilig-Meyers Furniture Co.*, 525 S.E.2d 145, 146-47 (Ga. Ct. App. 1999))). "If after the arrest the warrant is dismissed or not followed up, the remedy is for [false] arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for [false] arrest will not lie." *Id*. (quoting *Garner*, 525 S.E.2d at 145). "For the purposes of malicious prosecution, 'an inquiry before a committing court or a magistrate shall amount to a prosecution.'" *Id*. (quoting O.C.G.A. § 51-7-42).

The answer to our first question—whether Wilder was detained using a warrant—is "yes." Wilder's Complaint clearly says that Graves obtained an arrest warrant, and that Wilder voluntarily turned himself in once he learned of the arrest warrant. [Doc. 1, ¶¶ 23, 24]. Since Wilder was detained pursuant to a warrant, he cannot

8

maintain a claim for false imprisonment against any party for his detention. Accordingly, the Court **DISMISSES** Wilder's false imprisonment claims against all Defendants.

Wilder's indefinite and chimerical Complaint makes the second question—was there a prosecution?—much harder to answer. While endeavoring to do so, the Court focuses on the appropriate pleading standard. When a court rules on a motion to dismiss, it must take all the factual allegations in the complaint as true, however, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. District courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

Wilder's Complaint fails to include any factual (as opposed to conclusory) allegations showing that the action was "carried on to a prosecution" following his arrest. *Sheffield*, 839 S.E.2d at 300. To illustrate, consider what Wilder chose to put in his complaint regarding any alleged prosecution.

First, he candidly admits that "[t]he prosecution of Plaintiff commenced by Defendants has gone nowhere, and it will terminate in favor of Plaintiff." [Doc. 1, ¶ 98]. Wilder also alleges the "prosecution of Plaintiff has been commenced and continued with malice." [*Id*. at ¶ 99]. Wilder states that the "warrant referenced charges of criminal

9

attempt to commit robbery by sudden snatching, terroristic threats (felony), and simple battery." [*Id.* at ¶ 102]. Finally, Wilder claims that the "charges against Mr. Wilder are preposterous and cannot succeed, should they continue to be prosecuted though two years later, they have not moved forward." [*Id.* at ¶ 30]. Out of the above-mentioned assertions in Wilder's Complaint, the only non-conclusory assertions are that the arrest warrant referenced charges of criminal attempt to commit robbery by sudden snatching, terroristic threats (felony), and simple battery, and that any "prosecution" has "not moved forward."[4]

Facts that support concluding a "prosecution has commenced" commonly include the arrestee appearing before a judge who set his or her bond, or the committing court holding some sort of inquiry involving the arrestee. *Sheffield*, 839 S.E.2d at 300; *Branson v. Donaldson*, 426 S.E.2d 218, 221 (Ga. Ct. App. 1992). Of particular importance here, O.C.G.A. § 51-7-42 provides that "an inquiry before a committing court or a magistrate shall amount to a prosecution." The only post-arrest factual assertion contained in Wilder's Complaint is that he "was held in custody for approximately 47 days," mentioning nothing at all about appearing before any court whatsoever.[5] [Doc. 1, ¶ 25]. Wilder states that the prosecution is ongoing, but that it has

---

[4] To clarify, the "not moved forward" portion is factual; the "prosecution" reference is conclusory.

[5] Although Plaintiff tries to infer that he was held in custody for 47 days because of the warrant taken against him by Officer Graves, he could have been held for other reasons such as an outstanding arrest or probation warrant. Without definitive facts relevant to *this* particular arrest, we just don't know.

10

not moved forward over the last two years. [Doc. 1, ¶ 30]. But, without any allegation that he appeared before a "committing court or a magistrate", Wilder's Complaint fails to properly allege an essential element of the tort of malicious prosecution, i.e., that there was in fact a prosecution (as that term is defined in the statute). Accordingly, the Court **DISMISSES** Wilder's state-law malicious prosecution claims against all Defendants.

      C.      <u>Wilder's False Arrest Claim Against Nu-Way, Hulie, and the Law Enforcement Defendants.</u>

Wilder claims false arrest under O.C.G.A. § 51-7-1 against all Defendants. [Doc. 1, ¶¶ 64–70]. Nu-Way and Hulie argue that Wilder fails to allege lack of probable cause or malicious conduct on the part of Nu-Way and Hulie, and that Wilder has not shown that the arrest terminated in his favor. [Doc. 8-1, p. 8–10]. The Law Enforcement Defendants, like Nu-Way and Hulie, argue that Wilder's false arrest claim fails because the prosecution of the charges against Wilder has commenced, remains ongoing, and has not yet terminated in his favor. [Doc. 9-1, 6–7].

"An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." O.C.G.A. § 51-7-1. "The elements of a false arrest claim include: (1) an arrest under the process of law, (2) without probable cause, and (3) made maliciously." *Desmond*, 532 S.E.2d at 567. "The malice contemplated by law in an action for malicious prosecution is the same as in an action for malicious arrest, and may consist in personal spite or in a general disregard of

11

the right consideration of mankind, directed by chance against the individual." *McKissick v. S.O.A., Inc.*, 684 S.E.2d 24, 29 (Ga. Ct. App. 2009). "Malice may be inferred from a total lack of probable cause." *Wills v. Arnett*, 702 S.E.2d 646, 648 (Ga. Ct. App. 2010). "No probable cause exists if a defendant knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts." *Sheffield*, 839 S.E.2d at 302 (quoting *McKissick*, 684 S.E.2d at 24). Critically, in a false arrest action, "it is also essential to show that the prosecution terminated in favor of the complaining party." *Desmond*, 532 S.E.2d at 467 (citing *Campbell v. Hyatt Regency*, 388 S.E.2d 341, 342 (Ga. Ct. App. 1989)).

Wilder states that he turned himself in to the authorities voluntarily once he learned an arrest warrant had been issued. [Doc. 1, ¶¶ 24, 25]. The text of O.C.G.A. § 51-7-1 explicitly requires an "arrest" for a false arrest action to accrue. *See also Desmond*, 532 S.E.2d at 567 (an "arrest" is an element of a false arrest claim). The Court recognizes that some Georgia cases refer to "detention using a warrant" as meeting the "arrest" element of a false arrest claim. *Smith*, 765 S.E.2d 518. The Court has no trouble finding that when the Law Enforcement Defendants executed the arrest warrant by detaining him after he voluntarily turned himself in, he was "arrested" for purposes of the Georgia false arrest statute.

Taking Plaintiff's complaint as true, the Court finds that Wilder alleges facts that show Hulie (and Nu-Way) acted maliciously when she presented information to Graves that he used to obtain the arrest warrant.[6] Specifically, Wilder alleges that Hulie made false statements to Graves. [Doc. 1, ¶¶ 92, 93 ("Hulie accused Plaintiff of trying to open her cash register.") ("Hulie falsely reported to the police officers when they arrived on the scene that Plaintiff tried to get into her cash register.")]. Wilder alleges that Graves "obtained an arrest warrant on false information." [*Id.* at ¶ 23]. The Court understands the "false information" upon which Graves obtained the warrant to be the allegedly false assertion that Wilder tried to reach into the cash drawer, made almost 72 paragraphs later in the Complaint. [*Id.* at ¶¶ 92, 93]. Wilder alleges that Graves watched a video of Wilder and Hulie's interaction, and that Hulie told Graves her version of the story, even to the point of Hulie "admit[ting] her responsibility" to Graves. [*Id.* at ¶ 23]. Therefore, because Wilder alleged that Hulie "knew the facts stated to the law enforcement official were false," Wilder has satisfied the "malice" prong of a false arrest claim against Hulie and her employer Nu-Way. *Sheffield*, 839 S.E.2d at 302. But, the analysis cannot end there.

---

[6] As a threshold matter, private parties who did not make an actual arrest themselves can still be liable for the tort of false arrest. *See, e.g., Fleming v. U-Haul*, 541 S.E.2d 75 (Ga. Ct. App. 2000) (issue of fact denying summary judgment on a false arrest claim on whether the lessor of the rental truck fully and fairly presented the facts to the magistrate who issued the arrest warrant). *See also Sheffield*, 839 S.E.2d at 302.

All Defendants argue that Wilder cannot state a claim for false arrest unless he shows that the criminal charges against him have been terminated in his favor. [Doc. 20, p. 6]. And, Defendants argue that because Plaintiff's criminal charges are still pending, his false arrest claims fail. [*Id*.]. They're right.

Regarding any "prosecution[7]", Plaintiff's Complaint clearly provides that it "*will terminate in favor of Plaintiff*," the "prosecution of Plaintiff has been commenced *and continued* with malice" and the "charges against Mr. Wilder are preposterous and cannot succeed, should they *continue to be prosecuted* … ." [Doc. 1 at ¶¶ 98, 99 and 30 (emphasis added)]. Thus, taking Plaintiff's Complaint as true, he effectively concedes that any such prosecution continues to present day so that it has not yet terminated in his favor.

In sum, Wilder alleges facts that satisfy all of the elements of a false arrest claim except for the requirement that "the prosecution terminated in favor of the complaining party." *Desmond*, 532 S.E.2d at 467. That omission is fatal to his false arrest claim. Accordingly, Wilder's false arrest claims against all Defendants are **DISMISSED**.[8]

---

[7] But, as discussed above, Wilder has not sufficiently alleged a prosecution at all, much less one terminated in his favor. *See* Discussion B, *supra*.

[8] Plaintiff also contends that Defendants improperly detained him without probable cause. Because the Court dismisses the false arrest claim for failing to allege termination in his favor, the Court need not address this argument.

D. <u>Punitive Damages Claim against Warner Robins</u>

Wilder brings claims for punitive damages against all Defendants. [Doc. 1, ¶¶ 121-23]. Defendant Warner Robins moves to dismiss the punitive damages claim against it. [Doc. 9-1, p. 7–8]. A municipality cannot be held liable for punitive damages absent statutory authorization. *City of Columbus v. Myszka*, 272 S.E.2d 302, 305 (Ga. 1980). *See also MARTA v. Boswell*, 405 S.E.2d 869, 870 (Ga. 1991) (holding that permitting punitive damage awards against governmental entities is against Georgia's public policy) (citing *City of Newport v. Fact Concerts*, 453 U.S. 247, 263, 267 (1981)). Wilder does not point to any statutory authorization that would permit an award of punitive damages against the municipality. [Doc. 18]. Accordingly, Wilder's claim for punitive against Warner Robins is **DISMISSED**.

## CONCLUSION

The Court **GRANTS** Defendants Hulie and Nu-Way's Motion to Dismiss [Doc. 8] and the Law Enforcement Defendants' Motion to Dismiss [Doc. 9] as to Plaintiff's false imprisonment, false arrest, and malicious prosecution claims.[9] The Court **GRANTS** Defendant Warner Robins Motion to Dismiss [Doc. 9] as to Plaintiff's punitive damages claims against it.

---

[9] The Law Enforcement Defendants move for dismissal in both their individual and official capacities. [Doc. 9-1, p. 1–2]. However, the Law Enforcement Defendants did not invoke official immunity in their Motion to Dismiss. Instead, the Law Enforcement Defendants demonstrated that Wilder did not properly plead a false imprisonment, false arrest, or malicious prosecution claim. Accordingly, the Court **DISMISSES** Wilder's claims against the Law Enforcement Defendants in both their individual and official capacities.

```
```

**SO ORDERED**, this 28th day of September, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**